**Ruth T. Walsh, Petitioner-Appellant, v. The Superior Oil Company, Defendant-Appellee.**

**Gen. No. 64–13.**

Fifth District.

June 4, 1964.

Rehearing denied June 19, 1964.

Thomas F. Walsh, of Lincoln, for appellant.

Wham & Wham, of Centralia, for appellee.

DOVE, P. J.

The general taxes for 1957 upon undivided fractional interests in oil, gas and other minerals, in and under certain described real estate, located in Jefferson County, Illinois, of which Peter L. Guth was the owner of record, not being paid, the County Court of said County, on October 1, 1958, entered a judgment and order of sale. At said sale, Ruth T. Walsh became the purchaser, and evidencing said purchase, she received from the County Clerk tax sale certificates of purchase.

Thereafter, and on August 30, 1960, Ruth Walsh filed her petition in the County Court of Jefferson County, which, among other things, recited the purchase by her of said mineral interests and the failure to redeem said premises from said tax sale. This petition prayed for an order directing the clerk to issue to her a deed of conveyance of the property described in her certificates of purchase. The defendants in this petition were Peter L. Guth, The Superior Oil Company, and Pursuit Oil Company, both corporations. The defendants did not appear and were defaulted.

On December 5, 1960, an order was entered directing the clerk to forthwith execute and deliver to petitioner, Ruth T. Walsh, "a good and sufficient deed of conveyance of the mineral interest," in the described real estate, and directing the defendants, upon the production of said deed of conveyance, to surrender possession of said mineral interest in the described real estate to the grantee, and upon default of so doing, that a writ of assistance issue.

On September 26, 1961, Ruth T. Walsh filed in the County Court of Jefferson County her petition, which alleged, among other things, that the clerk had issued the mineral deed as directed to petitioner, and that by virtue thereof petitioner succeeded to all the right, title and interest of defendant, Peter L. Guth, in the described premises; that Superior Oil Company is the tenant in possession of the greater part of said mineral interests as assignee of a valid and subsisting oil and gas lease; that it refuses to recognize petitioner as the lawful successor of Peter L. Guth in the ownership of said premises, and refuses to acknowledge that petitioner has any rights in or to the mineral interests in said premises.

This petition prayed that a writ of assistance issue, "directed to the Superior Oil Company, a corporation,

its agents and servants, commanding it forthwith to put petitioner, without delay, into the full, peaceable and quiet possession of that part of said mineral interests in real estate wherein the relation of lessor and lessee between them was established on the fifth day of December, A. D. 1960, by the order of this honorable court, and to maintain and keep her in such peaceable and quiet possession thereof according to the true intent and meaning of said order."

The clerk of said court issued this writ as directed, and delivered it to the Sheriff of Jefferson County to execute. This writ referred to the judgment and order of sale entered by the County Court on October 1, 1958, and described the real estate involved as "that mineral interest in real estate then described as Grand Prairie Mineral Deeds, Peter Guth, Boyd Field Unit Lease, .0005510 R. I., and that mineral interest in real estate then described on the T4 records of said county as Rome Mineral Deeds, Peter Guth, Boyd Field Unit Lease, .0006510 R. I., sold for the delinquent 1957 general taxes." This writ commanded the Sheriff to immediately enter upon said mineral interests and expel therefrom the Superior Oil Company "out of and from any and all interest in said mineral interests in real estate, save that interest therein which said corporation enjoys as an assignee of a valid and subsisting oil and gas lease of a part of said mineral interests, and that you do place and put the said Ruth T. Walsh into the full, peaceable and quiet possession thereof, subject to, and only to, the lawful right of said corporation therein as said assignee, and keep her in such peaceable and quiet possession, when and as often as said corporation shall interrupt or shall attempt to interrupt, or shall attempt otherwise to interfere with, or minimize the basic lessor-lessee relationship between the said Ruth T. Walsh and said

43

corporation, established on the fifth day of December, A. D. 1960, according to the true intent and meaning of said order."

This writ of assistance was served by the Sheriff on October 19, 1961, as shown by his return thereon, by delivering a copy thereof to the Production Manager of the Boyd Field Unit, Russell Lockwood.

On December 26, 1961, Ruth Walsh filed the instant petition in the County Court of Jefferson County, which recited the foregoing proceedings, and prayed for the entry of rule directing the Superior Oil Company to show cause why it should not be held in contempt of court for its defiance of the writ of assistance issued by the court for the purpose of putting petitioner in quiet possession of "said mineral interests in real estate."

The Superior Oil Company appeared and filed its verified answer. This answer averred that the tax deed, the proceedings therefor, and the mineral interests therein described, are all subject to oil and gas leases, and also subject to incidental agreements, all appearing of record in Jefferson County; that by the terms of these leases, the lessees therein and their assigns obtained the exclusive right to produce oil and gas from the lands therein described, for the primary term therein specified and so long thereafter as continued, upon a one-eighth royalty basis, by delivering said share of the oil produced for the credit of lessors and their assigns, or by paying the market price therefor; that by the terms of said leases no change in ownership of the land, on assignment of the royalties, or rentals therein provided, should be binding upon the lessee until after the lessee has been furnished with good and sufficient evidence thereof; that petitioner, though requested, has failed and refused to furnish defendant with a supplemental abstract of title or transcript of proceedings evidencing

the asserted changes in ownership; that said lease-holds, and the lands therein described are, and were, at the time of the issuance of said tax deed, and prior to and during the proceedings therefor, within and a part of the oil producing area commonly known as the "Boyd Field Unit," as particularly evidenced by an unitization agreement, and by the Unit Operating Agreements, all of which appear of record in Oil and Gas Lease Records in the Recorder's Office of Jefferson County, Illinois.

The answer of defendant then averred that by virtue of said agreements, forty-five tracts of land, and the respective oil and gas leases covering said tracts, have been pooled and are being operated, in the production and marketing of oil, as a single unit, known as the "Boyd Field Unit." It is then averred that 38 persons, firms, and corporations (giving their names), own leasehold or working interests in said "Boyd Field Unit," and that there are 182 royalty owners in the Boyd Field Unit (giving their names), whose royalties are paid by corporations other than defendant, Superior Oil Company, and 145 royalty owners (giving their names), to whom royalties are paid by defendant.

It is then averred that the Superior Oil Company is the operator of said "Boyd Field Unit" pursuant to, and as provided in, said Unitization Agreement and Unit Operating Agreement; that the said Oil Company is powerless to surrender possession of said mineral interests or put petitioner in possession of said mineral interests as demanded by petitioner; that any rights which petitioner has, or could have acquired, in and to said mineral interests are expressly subject to said oil and gas leases, Unitization Agreement and Unit Operating Agreement; and that petitioner is not entitled to possession of any mineral interests in said premises, and any right she may have in said land

45

is not recoverable, or enforceable, by a writ of assistance.

In its answer the defendant then averred that petitioner's rights, if any, are limited to a right of participation in the proceeds of oil or gas produced, saved and marketed from said "Boyd Field Unit," and that petitioner's remedy, if any, is by appropriate legal action for the recovery of such part of the oil proceeds or the enforcement of such rights as she may have in the "Boyd Field Unit Operating Agreement." The answer concluded by averring that defendant was not in contempt of any of the orders of the court, and prayed that the rule to show cause be discharged. Attached to the answer of the defendant was a copy of a map of the Boyd Field Secondary Recovery Project, a schedule listing the names of 38 persons who are working interest owners in the Boyd Field Unit, a schedule listing the names of 182 royalty owners in the Boyd Field Unit, whose royalties are paid by corporations other than the defendant, and a schedule listing the names of 145 royalty owners in the Boyd Field Unit, to whom royalties are being paid by defendant.

The record discloses that no further pleadings or motions were filed, and the order appealed from recites that the cause was submitted to the court solely on the petition for a rule to show cause and the answer thereto. At the conclusion of the hearing the trial court entered an order which found that the tax deed issued to petitioner covered certain mineral interests in real estate described in the order of the trial court on December 5, 1960; that grantees in tax deeds are entitled to a writ of assistance under the laws of this state; that only constructive possession of the real estate involved in this proceeding could be given to petitioner; that the proceeds from the sale of oil produced from the mineral interests conveyed

46

by the tax deed are not subject to control by a writ of assistance; that the mineral interests of petitioner have been communitized with the other mineral interests; and that there is no producing oil well on the premises involved in this proceeding. The order concluded that defendant was not in contempt for failing to pay to petitioner the proceeds of oil produced from the mineral interests conveyed to petitioner by said tax deeds, and dismissed the petition at the costs of petitioner. To reverse this order, petitioner, Ruth T. Walsh, appeals.

The theory of appellant is that the tax deed conveyed to her whatever mineral interest Peter L. Guth had in the premises described in the deed, and established a landlord-tenant and a lessor-lessee relationship between herself and the Superior Oil Company, and that as landlord and lessor she was entitled to possession of the mineral interests conveyed to her, and was entitled to obtain possession of such interests by a writ of assistance. Counsel argue that when appellee was served with this writ of assistance, it had three choices or alternatives, (1) to attorn to its new landlord; (2) to yield possession of the real estate to appellant; or (3) to stand in defiance of the writ, and the order of the court upon which it was based. Counsel insist that appellee deliberately made the third choice, and by so doing was guilty of a civil contempt, and that the trial court erred in its refusal to enforce its own orders and processes.

The Revenue Act of 1939, as amended, outlines the procedure to be followed in order to obtain a tax deed, gives the County Court jurisdiction to issue a writ of assistance to put the grantee in possession of said real estate described in the conveyance, and provides that tax deeds issued pursuant to the provisions of the statute shall be incontestable except by appeal from the order of the County Court, direct-

47

ing the County Clerk to issue the tax deed. (Ill Rev Stats 1963, c 120, § 747.)

While the statute confers jurisdiction on the County Court to issue a writ of assistance to the purchaser of realty at tax sales, and while orders made by a court having jurisdiction of the subject matter and of the parties, should be respected and obeyed, no order requiring the performance of the impossible can be the basis for a further contempt order. In the instant case, the County Court had directed appellee to surrender possession of the mineral interest in the described premises to appellant, and in default thereof, directed that a writ of assistance issue. The record shows that the writ of assistance did issue, but the return of the sheriff shows it was not executed. All the sheriff did was to deliver a true copy of the writ to the Production Manager of the Boyd Field Unit. The reason, of course, why the sheriff did not put appellant "into the full, peaceable and quiet possession" of the property described in the writ, as he was commanded to do was because it was impossible for him to do so.

Counsel for appellant insists that as an incident of appellant's ownership of the mineral interests in the real estate described in her deed, which was subject to a valid and subsisting oil and gas lease assigned to appellee, she is entitled to all royalties accruing to the lessor of said lands since December 5, 1960 and contends that she may enforce this right by a writ of assistance, concluding: "It is arrant nonsense for the defendant to say that it is powerless to surrender possession of the mineral interests in this land to appellant, or powerless to put her in possession thereof, or that she is not entitled to possession of such real estate. Appellee," continues counsel, "can only lawfully avail itself of its rights under the lease executed by appellant's predecessor in title, by attorning to

appellant and paying to her all oil royalties accruing since December 5, 1960, the date of her deed."

The record discloses that by the terms of the lease executed by appellant's predecessor in title, the lessees and their assigns obtained the exclusive right to produce oil and gas from the lands therein described for the primary term, and so long thereafter as continued upon a one-eighth royalty basis, by delivering said share of oil to the oil purchaser for the credit of lessor, or by paying the market price therefor. Under the agreements of the owners of the minerals, under 45 separate tracts of land, all of which had been leased as above indicated, the leases were pooled and the several tracts operated as a unit, and all parties alloted a certain percentage of the total oil production, the percentage of ownership of each person being based upon the proportion which his interest bears to the whole tract. The "Boyd Field" unitization agreement was in existence prior to the issuing of the tax deed. The lessees of all the mineral interests in this field, and their assignees, had the exclusive right of possession of the underlying oil and minerals. Appellee's only duty is to operate the field. It has no interest in the royalty except to pay the correct amount to the lawful owners, and thereby avoid a further liability if it should pay the proceeds or any part thereof to the wrong person.

This case is in this court, not for the purpose of upholding a finding of contempt of court, but for an order of this court directing the trial court to find appellee guilty of a civil contempt of court. If the trial court had entered an order finding defendant in contempt, it would have been entered for the purpose of securing obedience to the previous order of December 5, 1960, which directed the defendant, upon the production of the deed of conveyance, to surrender possession of the described mineral interest to appel-

49

lant. The only penalty provided in this order was that if defendant did not do so, a writ of assistance should issue. A writ of assistance did issue at the request of appellant, and the instant petition followed, which required appellee to show cause why it should not be held in contempt "for its defiance of the writ of assistance."

Civil contempts consist in failing to do something which the contemner is ordered to do for the benefit or advantage of another party to the proceeding. In civil contempt the sentence is a coercive measure, and the appropriate punishment is to commit the contumacious party to imprisonment until he has complied with the mandate of the court. In such proceedings the order entered serves two purposes, it vindicates the authority and dignity of the court, and also advances the relief granted to a party to the litigation. (People v. Redlich, 402 Ill 270, 277, 83 NE 2d 736.)

Appellant seeks, by this proceeding, to coerce appellee to pay to her the oil royalty which has accrued to the credit of Peter L. Guth since December 6, 1960, the date she received her tax deed. The rights of appellee under its lease, and the unitization and operating agreements were in no way affected because Guth refused to pay his property taxes, or by the proceedings which followed. Mr. Guth was a royalty owner. Royalties are defined as "the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows." The right to receive royalties is an interest in land, and accrued royalties are personal property. (Ohio Oil Co. v. Wright, 386 Ill 206, 212, 53 NE2d 966.)

There is nothing in this record to indicate, either that appellee, after receiving notice of the instant proceeding acted contemptuously in refusing to pay appellant any royalty, or did it, in so refusing,

do anything which was calculated to embarrass, hinder or obstruct the court in the administration of justice, or which was calculated to lessen its authority or dignity. The trial court, which directed the issuance of the order to show cause, so found, and in so doing, did not abuse its discretion.

■ ■ A writ of assistance is a process issued by a court to transfer the possession of realty. It is not the institution of a new suit, but incidental or auxiliary to a judgment or decree, and employed to enforce or effectuate such judgment. It is a summary proceeding and generally the party who is adjudged to have the right to possession of the property is entitled to have a writ of assistance. (3 ILP Writ of Assistance, §§ 2, 3, 4, pp 529, 530, 531.) The writ never issues except in cases substantially free from doubt as to the right of possession, and only when there is no appearance of equity in the defendant in possession. (4 Am Jur Writ of Assistance, § 5, p 441.)

In the instant case, the record discloses that appellee has, not only the exclusive right to the possession of the premises involved, but also equities which require consideration.

There is no issue in this case about the right of the owner of real estate to sell the underlying minerals or lease the same, nor is there any question that real estate may be sold for delinquent taxes, or that a tax deed, if valid, passes title to the grantee, or that a writ of assistance may issue as provided by the statute. Appellant's sixty-eight-page brief, however, citing or repeating the citation of more than 150 cases, together with references to several recognized textbooks and legal authorities, and her nineteen-page reply brief, has to do, largely, with these propositions. The issues appellant desires to litigate cannot be determined in a contempt proceeding. No case has been called to our attention which indicates that a grantee

51

in a tax deed may hold the operator of a unitized oil field, under the agreements and conditions disclosed by this record, in contempt of a court order impossible of execution.

The trial court did not abuse its discretion in entering the order appealed from, and that order will be affirmed.

Judgment affirmed.

WRIGHT and REYNOLDS, JJ., concur.