Bernice Mattioda, Plaintiff-Appellee, v. Omer L. Mattioda, Defendant-Appellant.

Gen. No. 50,887.

First District, First Division.

November 4, 1968.

Jacobs & Lieberman, of Chicago (Eugene Lieberman, of counsel), for appellant.

Robert M. Woodward, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from orders of the Divorce Division of the Circuit Court, finding the defendant guilty of wilful contempt for failure to pay alimony, child support and mortgage payments in a separate maintenance action. The defendant also appeals from certain orders to pay support, mortgage and arrearages. A motion to dismiss the appeal on the grounds that the defendant-appellant failed to file a sufficient record and abstract and that the notice of appeal was not filed within the time required was made by the plaintiff-appellee and taken with the case. The motion to dismiss the appeal has been considered and is denied.

We must note here that the defendant filed his brief on December 16, 1965, but that the plaintiff did not file her brief until June 18, 1968. We were told during oral argument that the delay was due to the attempt to settle the matter amicably.

The record shows that the parties have been married since 1941, have one married daughter and one daughter, Sharon, who was fourteen years of age in January 1962. In 1952, they purchased a home subject to a mortgage. The parties resided together as husband and wife until about December 28, 1961, and on January 9, 1962, the plaintiff-wife filed the Complaint for Separate Maintenance. The defendant's appearance was filed by Peter

J. Tatoolis, his attorney, although it appears he was not served with summons. An order was entered by Judge William V. Daly on June 28, 1962, after hearing testimony of the parties, awarding the plaintiff $68 per week for temporary alimony and for temporary support of the minor child, Sharon. The order further recited that it was predicated upon the representation of the defendant that his present earnings averaged $92 per week. The plaintiff was also allowed $150 as and for her temporary attorney's fees. On July 2, 1962, Attorney Tatoolis withdrew as defendant's lawyer.

On March 18, 1963, the defendant was adjudged in default for failure to file an answer or otherwise make an appearance and the case was heard ex parte by Judge Herbert R. Friedlund. Mrs. Mattioda, plaintiff, testified that her husband deserted her in December 1961. She also testified that the defendant was in arrears about $1,450 and had not yet paid her allowance for attorney's fees. Although the plaintiff was not sure how much her husband's take-home pay was, she thought it was over One Hundred Dollars a week. She stated that title to the house was put in a trust with herself as beneficiary and that her husband had placed various mortgages on the house from time to time. Plaintiff also testified that the Apollo Savings and Loan Association sent several letters advising them they would have to pay additional attorney's fees and other expenses if the payments on the mortgage were not made. She said her husband promised to make the payments, but did not. The court allowed plaintiff $50 a week for her support and for that of the minor child and $500 for her attorney's fees. When plaintiff's counsel argued that plaintiff had to pay $49.50 a month for insurance and $144.50 a month on the mortgage and that the defendant squandered about $20,000, the court stated that $50 a week was all he could give her for support on the basis of the defendant's take-home pay. The court also told plaintiff's

lawyer to provide in the decree that the defendant convey and quitclaim whatever interest he may have in the real estate.

A decree for separate maintenance was signed by Judge Friedlund on April 10, 1963, in which the defendant was ordered to quitclaim all of his title and interest, if any, to the realty, to his wife; that he pay $1,450 arrearage on the previous court order for support; that he pay $50 per week support for plaintiff and for the minor child; and that he pay $500 to plaintiff's counsel for attorney's fees.

One week later, on April 17, 1963, the plaintiff came before Judge Nathan Cohen with a petition for a rule to show cause. Judge Cohen entered an order that an attachment issue against the defendant for his wilful failure to pay $1,450 support and also his failure to pay the monthly mortgage payments he repeatedly promised to make. On April 29, 1963, the court ordered defendant to pay $80 by April 30, and the matter was continued to May 23. On that day, Judge Cohen heard plaintiff's petition for a rule to show cause. The defendant was ordered to continue paying $50 a week.

On June 17, 1963, plaintiff filed another petition for a rule to show cause. She alleged that in addition to the $2,207 due under the separate maintenance decree as of May 17, the defendant should be required to pay the sum of $1,265.88. On June 21, 1963, an order was entered by Judge Cohen finding that the defendant was in arrears for support in the sum of $1,753. The court also found that the defendant owed $650 to the plaintiff's attorney and that the defendant had wilfully failed to comply with the orders of the court. Judge Cohen ordered the defendant to pay $40 per week for the support of plaintiff and for the minor child, $100 attorney's fees, the sum of $200 on his arrearages within ten days, and thereafter the sum of $10 per week on support arrearage and $10 per week on the arrearage due to counsel fees.

479

On July 24, 1963, plaintiff again filed a petition for a rule to show cause alleging that the defendant wilfully refused to comply with the orders of the court. An answer was filed by the defendant two days later in which he alleged that he was not guilty of wilful conduct, but rather had paid plaintiff $40 per week for support as ordered by Judge Cohen on June 21. He further alleged that the plaintiff was harassing him by bringing a multiplicity of rules to show cause making it impossible for him to comply with the various court orders. On July 29, 1963, Judge Sigmund J. Stefanowicz entered an order upon plaintiff's petition for a rule to show cause ordering the defendant to pay plaintiff an additional $2 per week for twenty weeks until the disputed payment of June 22, 1963, was paid.

On August 20, 1963, Judge P. A. Sorrentino heard the matter concerning mortgage payments and school tuition of the minor child. This matter had been heard by Judge Cohen on June 17, 1963, but had been set for rehearing on June 27, then July 26, and finally August 20. Judge Sorrentino found that the defendant had promised to make the mortgage payments and that "[s]aid payments became due by reason that Defendant caused a mortgage to be placed on her [plaintiff's] home and used the monies mainly for his own personal use and pleasure. . . ." After crediting the defendant with $700 he had paid on the mortgage, the Judge found that the defendant was indebted to the plaintiff in the sum of $2,988.38, and was indebted to his daughter, Sharon, for tuition, in the sum of $100. The defendant was ordered to pay this arrearage at the rate of $50 a month in addition to the arrearage the defendant was already ordered to pay under the order of June 21. Also, the defendant was ordered to pay monthly mortgage payments of $109.50 each month.

A little over two years later, on September 10, 1965, plaintiff filed another verified petition for a rule to

480

show cause. The plaintiff alleged that the defendant caused a mortgage to be placed in the sum of $17,000 and although he agreed to pay $144.50 a month he has wilfully refused and failed to do so; that the holder of the mortgage had repeatedly threatened to file foreclosure proceedings and in order to avoid foreclosure the plaintiff was compelled to make payments which she could not afford; and that the mortgage was in default for nonpayment in the sum of $5,810, and the defendant was also in arrears for support and attorney's fees in the sum of $2,250. On that same day the defendant filed a verified petition and answer in which he alleged, among other things, that plaintiff was aware at all times that the defendant, in Arnone v. Mattioda, 59C 11545, had been ordered under pain of imprisonment to pay $12,000 to certain creditors, and that upon failure to pay at least $150 per month upon said judgment, the defendant would be put in jail; that the payment of money called for by the various orders came to $117.50 per week out of his total salary of $92 per week; and that the plaintiff was employed and earned at least $60 per week. The defendant prayed that the rule to show cause be quashed; that the order requiring him to pay mortgage payments be vacated and set aside; that the support order and decree of separate maintenance and all orders subsequent thereto be declared void; and that since the minor child would reach her majority in October 1965, the order of support should be modified.

It appears from a transcript of the record that the parties appeared before Judge Fred W. Slater on September 9, 1965. The respective attorneys argued about the petitions and orders that had been filed, but no evidence was heard. Afterwards the court stated, "I'm not going to sit here and act as an Appellate Court over all these orders. I'm going to deny, then you can take it all up on appeal. I'm not going to sit here and act as an Appellate Judge." After more argument the court stated

481

"There will be a finding of contempt and stay of execution for twenty-one days. See that he comes in here with some plan that is acceptable. We have to make it a stay of execution until the 20th of October."

An order was signed by Judge Slater on September 10, 1965, reciting that the petition of defendant to vacate all previous orders and the decree of separate maintenance was denied; that the defendant was found to be in arrears to the sum of $8,160; that defendant was in contempt of court for wilfully failing to pay this sum; and that defendant be committed to the County Jail. On September 24, 1965, the order of September 10 was changed by Judge Slater. The order stated that after a hearing to show cause it was found that the defendant was guilty of wilful contempt for his refusal to pay $8,160 and ordered his imprisonment for six months unless he should purge himself of contempt. The defendant was imprisoned until released by order of this Court about a month later.

The defendant-appellant appeals from the order of the Circuit Court entered on September 10, 1965, which found him in arrears in the amount of $8,160 and committing him to jail; the order of September 24, 1965, committing him to jail for six months; the order entered on September 29, 1965, denying him his right to present instanter his petition for mitigation and offer to purge himself and from the orders of June 10, June 17, and June 21, 1963, as being void.

The order of commitment recites that the defendant is in arrears in the sum of $8,160. Part of the arrearage is unpaid installments on the mortgage. We have determined that it was error to include mortgage payments.

At the ex parte hearing in the separate maintenance suit held on March 18, 1963, Judge Friedlund orally told plaintiff's counsel that he should provide in the separate maintenance decree that the defendant quitclaim what-

ever interest he had in the real estate and that $50 a week be fixed for support. When plaintiff's counsel pointed out to the court that in addition to her necessary expenses the plaintiff had to pay $144.50 a month on the mortgage and $49 a month on insurance, the court replied that he could not allow the plaintiff any more than $50 a week based on the defendant's earnings. Decree for separate maintenance entered on April 10, 1963, found that the plaintiff was the sole owner of the property and the defendant was ordered, among other things, to quitclaim any interest he may have had to his wife. We note that the court did not reserve jurisdiction in the matter of the mortgage payments, etc., but concluded the matter by ordering the defendant to quitclaim his interest in the house. In a subsequent post-decree order entered by Judge Cohen, an attachment was issued against the defendant which included mortgage payments "which he promised repeatedly to make."

Section 23.2 of the Separate Maintenance Act (Ill Rev Stats 1967, c 68, § 22 et seq.) provides that the process, practice and proceedings under the Act shall be the same as provided for in the Divorce Act (Ill Rev Stats 1967, c 40, § 1 et seq.). The Divorce Act provides in section 7 that the process, practice and proceedings under the Act shall be the same as in other civil cases except as otherwise provided by this Act. As is well known, section 19 of the Divorce Act provides, in part, that "The court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance . . . as shall appear reasonable and proper." (Ill Rev Stats 1967, c 40, § 19.)

■ ■ The cases uniformly hold that an alteration will be made only when the conditions and circumstances of the parties have materially changed since the entry of the original decree. Green v. Green, 86 Ill App2d 362, 229 NE2d 565; Gregory v. Gregory, 52 Ill App2d 262, 202 NE2d 139. The decree is final as to the cir-

cumstances and conditions of the parties as of the date of its entry and the court can, therefore, only consider such changes that have occurred subsequently. Nye v. Nye, 411 Ill 408, 105 NE2d 300.

 The record reveals that in addition to requesting support money when the matter of separate maintenance was heard ex parte the plaintiff requested that the defendant be ordered to pay the mortgage payments due on her house. This request was refused and the decree recited that the defendant quitclaim all his title and interest in the property, if any, to plaintiff. Thus, the matter of mortgage payments was adjudicated against the plaintiff. No evidence was offered to prove that the defendant's circumstances had changed materially since the entry of the decree and we hold that all orders entered thereafter which include mortgage payments due to the plaintiff are void.

 We turn now to the arrears in support payments and the order finding the defendant in contempt for failure to comply with the various court orders and the separate maintenance decree. It is well settled in Illinois that the court has the power to commit defendant to jail for failure to comply with orders and decrees in a separate maintenance suit. De Salvo v. De Salvo, 7 Ill App2d 16, 128 NE2d 594 (abstract). A spouse's failure or refusal to pay when he has income or property available which can be used for that purpose is generally regarded as wilful, and justifies an order committing such spouse for contempt. However, the court's power to enforce the payment of support money or attorney's fees by contempt is limited to cases of wilful and contumacious refusal to obey the order of the court. Wick v. Wick, 19 Ill2d 457, 167 NE2d 207; Mesirow v. Mesirow, 346 Ill 219, 178 NE2d 411. Defendant's failure to pay as ordered is not punishable as contempt when he is without fault unable to pay. Kadlowsky v. Kadlowsky,

63 Ill App 292. In determining the propriety of orders in enforcement proceedings it is necessary, however, that each case be viewed in the light of its own peculiar facts. Wick v. Wick, 19 Ill2d 457, 461, 167 NE2d 207.

■ The record indicates that the defendant may have been uncooperative and may have caused numerous court appearances by plaintiff and her attorney. However, the record also shows that the judge who committed the defendant heard no evidence as to whether defendant's failure to pay was a wilful and contumacious refusal to obey the order of the court. In addition the order erroneously includes mortgage payments. An examination of the record suggests the equally plausible explanation that the defendant was unable to comply with the court's orders.[1] Since a party may not be imprisoned for contempt unless his disobedience of court orders is wilful or unless he has voluntarily created the disability for the purpose of avoiding the payment of support, the order committing the defendant to jail for six months must be reversed and remanded.

For the reasons stated, the order committing the defendant to jail is reversed and remanded with directions to hear evidence as to amount of support money defendant has failed to pay and to also determine whether defendant's refusal was wilful and contumacious. Also, that portion of the arrearage due to mortgage payments is not to be included in the computation of what the defendant has failed to pay the plaintiff.

On October 9, 1968, a petition was filed in this court seeking to hold the defendant in contempt of court which was taken with the case. This petition is to be

[1] It appears from the record that the defendant has also been involved in another lawsuit where he was ordered to pay $12,000 to certain creditors at $150 per month. Apparently, if he did not make these payments he would be put in jail.

considered by the trial judge in the light of this opinion.

Reversed and remanded with directions.

ADESKO and MURPHY, JJ., concur.