(No. 46157.—)

THE COUNTY OF COOK, Appellant, v. LLOYD A. FRY ROOFING COMPANY, Appellee.

*Opinion filed November 18, 1974.*

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, and Paul P. Biebel, Jr., Melvin A. Reiff, and Donald P. Smith, Assistant State's Attorneys, of counsel), for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Burton Y. Weitzenfeld, Arthur L. Klein and Paul L. Leeds, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Lloyd A. Fry Roofing Co., was adjudged in contempt in the circuit court of Cook County. It was ordered to pay $10,000 on account as a credit toward the total amount due and owing. The appellate court reversed (13 Ill. App. 3d 244 (abstract opinion)), and we granted leave to appeal. The principal issues are whether the defendant's intent is relevant to a finding of civil contempt under the circumstances presented and whether defendant's inability to comply with the court order relieves it of liability for contempt.

On February 11, 1971, plaintiff, the County of Cook, filed a complaint for injunctive relief alleging that defendant had committed certain air-pollution violations at its plant in Summit, Illinois. Proceedings were conducted at which various witnesses testified as to noxious odors and dense smoke which emanated from the plant. On May 6, 1971, an agreed order was entered as a result of prior discussions between the parties. The order specified that it was not to be construed as an admission of pollution violations by defendant nor as an admission that plaintiff's claims were groundless. The order indicated that the plans for a pollution-abatement system had been formulated about April 21, 1971, and may have been devised in conjunction with a related pollution matter (*Lloyd A. Fry Roofing Co. v. Pollution Control Board,* 20 Ill. App. 3d 301). It further recited that the pollution system was to be installed at defendant's plant on or before July 19, 1971, that defendant could test and correct the operation of said system until August 2, 1971, that the county pollution agency would thereafter conduct its own test, and that the parties would report the test results to the court on August 19, 1971.

On July 22, 1971, defendant filed a motion to modify the aforesaid order by extending the time for compliance to September 30, 1971, and for a new testing schedule. Plaintiff countered with a motion seeking to enjoin the operation of defendant's plant.

On July 26, 1971, a hearing was conducted on these motions, at which time Paul B. McInerney, an officer of defendant, was called to testify. He stated that in this capacity he acted as defendant's coordinator for pollution matters. He explained that defendant's plant in Summit had two engineers and a director of environmental control, although the latter had left defendant's employment on June 1, 1971, and this position was not filled until seven weeks later. He admitted that he determined the dates set forth in the agreed order for installation and testing of the

pollution equipment based upon information received from defendant's chief engineer, and that he had miscalculated these dates.

McInerney's testimony also established that defendant entered into an agreement on June 12, 1971, to construct a concrete foundation upon which the pollution equipment would be erected. The concrete work, which started about June 19 before a permit had been issued, was not finished until July 20, 1971.

One of the three bids submitted to defendant for the pollution-control system was sent to defendant by Bacon Tank & Manufacturing Co. (hereafter Bacon) on May 20, 1971. The bid specified that installation was to commence by August 31 and was to be completed by September 30, 1971. Defendant's subsequent purchase order with Bacon, dated June 19, 1971, reiterated this time period for the construction work. McInerney did not produce the other bids, but he said Bacon's bid was the most reasonable and it also encompassed installation of the system as well as fabrication.

McInerney further testified that he was unaware of this work schedule until he saw the purchase order, about July 15, 1971. He attributed this lack of knowledge to assurances given him by the former director of environmental control and the chief engineer concerning the bids, and it was not until the new director took over that McInerney was fully apprised of the situation. At that point the chief engineer unsuccessfully sought other bids. In attempting to reconcile the one-month delay between Bacon's bid and its acceptance, McInerney explained that neither he nor his subordinates had "followed through."

At the conclusion of this hearing, the circuit court refused to enjoin the operation of defendant's plant because this remedy would result in the unemployment of numerous workers. The court then ruled that defendant was in contempt of court and assessed a fine of $200 for each day the plant was in operation in violation of the

terms of the agreed order. The contempt order was entered on August 2, 1971. Thereafter various reports were made to the court concerning the progress of installing the pollution equipment, and defendant's attempts to vacate the contempt order were rejected. The record suggests that the system was not completely installed until January 27, 1972. One month thereafter the circuit court reduced the fine to the judgment from which this appeal is taken and set a date at which the total amount was to be ascertained.

The appellate court reasoned that Fry had sufficiently established that it could not comply with the provisions of the agreed order and that the evidence was insufficient to establish that defendant's conduct was "wilful in the sense that it fraudulently placed itself in a position where it could not comply with the agreed order." Thus the appellate court concluded that the trial court "abused its discretion in finding Fry in contempt of court." Plaintiff asserts that the appellate court erred because neither wilfulness nor intent is a necessary element for a finding of civil contempt. Moreover, plaintiff argues that the terms of the agreed order should bind the parties, especially where the defendant has supplied the crucial terms thereto.

Contempt proceedings have been generally classified as civil or criminal, although we have recognized that each may entail similar characteristics. (*People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill.2d 407, 409.) However, an attempt by a court to compel compliance with its orders may be categorized as civil contempt. (*Shillitani v. United States*, 384 U.S. 364, 368, 16 L. Ed. 2d 622, 626, 86 S. Ct. 1531; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 93 L. Ed. 599, 604, 69 S. Ct. 497; *People ex rel. Kazubowski v. Ray*, 48 Ill.2d 413, 416, *cert. denied*, 404 U.S. 818; *International Business Machines Corp. v. United States* (2d Cir. 1973), 493 F.2d 112, *cert. denied*, 416 U.S. 995.) The contempt order entered in this cause was civil in nature, for its purpose was designed to expedite compliance with the terms of the agreed order, thereby

correcting the pollution violations allegedly committed by defendant.

Defendant contends that Illinois law requires wilful disobedience for a holding of civil contempt and that the record does not establish this prerequisite. In support of its position defendant has cited numerous decisions of this court and the appellate courts. Some concern cases involving criminal contempt. (*People v. Wilcox*, 5 Ill.2d 222; *Powers v. People*, 114 Ill. App. 323.) Others either generally relate to matrimonial matters in which the contemnor has failed to pay money as directed by court order, thereby resulting in incarceration (*e.g.*, *O'Callaghan v. O'Callaghan*, 69 Ill. 552; *Mattioda v. Mattioda*, 101 Ill. App. 2d 475; *Shapiro v. Shapiro*, 113 Ill. App. 2d 374) or involve a trustee who is subject to incarceration for failure to turn over property either due to insolvency or the fact that he never received the property (*Tudor v. Firebaugh*, 364 Ill. 283; *Moseley v. People*, 101 Ill. App. 564; *Adams v. Rakowski*, 319 Ill. App. 556). Underlying the rationale of the latter categories of cases would appear to be the reluctance, premised on constitutional grounds, to deprive an individual of his liberty for failure to pay money. As stated in *Tudor v. Firebaugh*, 364 Ill. 283, 288, "No one should be imprisoned for a failure to pay money unless evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it." The remaining authorities upon which defendant relies involve a situation where the contemnor did not establish that he could not pay (*First National Bank & Trust Co. of Evanston v. Desaro*, 43 Ill. App. 2d 153), where the trial court did not adhere to the mandate of the appellate court in a cause where a party who misappropriated securities failed to turn them over to the executrix of an estate in accord with a court order (*Wilson v. Fisher*, 369 Ill. 538), and where the trial court refused to adjudge a party in contempt on the evidence presented (*Walsh v. Superior Oil Co.*, 50 Ill. App. 2d 40).

The facts of the present case, which involves defendant's noncompliance with an agreed order, do not remotely resemble the cases cited by defendant. Rather this case is analogous to *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 93 L. Ed. 599, 69 S. Ct. 497, wherein certain parties failed to comply with an injunctive order. There the court stated, "The absence of wilfulness does not relieve from civil contempt. *** Since the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of [the contemnor's] mind ***. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." (336 U.S. at 191, 93 L. Ed. at 604; see also *United Factory Outlet, Inc., v. Jay's Stores, Inc.* (1972), —— Mass. ——, 278 N.E.2d 716; *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St. 2d 55, 271 N.E.2d 815; *United States v. Swingline, Inc.* (E.D.N.Y. 1974), 371 F. Supp. 37; 17 Am. Jur. 2d *Contempt* sec. 8, at 14-15 (1964).) We therefore hold that the intent of the defendant is not relevant in determining whether it should be adjudged in civil contempt of the agreed order.

Defendant also argues that its inability to comply with the terms of the agreed order precludes a finding of contempt. Plaintiff does not dispute this general proposition. The corollary to this rule, however, prevents assertion of the defense of inability where the contemnor has voluntarily created the incapacity. See *People ex rel. Melendez v. Melendez,* 47 Ill.2d 383, 387; *People v. Rezek,* 410 Ill. 618, 628, *cert. denied,* 343 U.S. 965; see also *Buck v. Myers* (1973), 20 Ariz. App. 571, 514 P.2d 742; *United States v. Swingline, Inc.* (E.D.N.Y. 1974), 371 F. Supp. 37; *Socony Mobil Oil Co. v. Northern Oil Co.* (1966), 126 Vt. 160, 225 A.2d 60; 17 C.J.S. *Contempt* sec. 19, at 49 (1963).

There is no dispute that the material portion of the agreed order was supplied by McInerney in his capacity as an officer of defendant. The record reflects not only a lack of diligence upon his part as well as other employees of defendant in securing compliance with the terms of the order, but also it may be inferred that there was a negligent if not an intentional disregard for the terms of the order when defendant accepted Bacon's bid with what must be assumed as full knowledge that Bacon could not complete the necessary work or even begin work until substantially beyond the date specified in the order. Moreover, the plans for the pollution equipment had been made in April, 1971, and the purchase order for installation of the necessary cement foundation was not made until a substantial portion of the compliance period had elapsed, and this work was not completed until July 20, 1971. While McInerney's testimony made an oblique reference to the fact that a permit for the necessary concrete work was not issued until the latter part of June, 1971, this delay should have clearly indicated that compliance with the terms of the order could not be had. Despite these factors defendant did not attempt to modify the agreed order until after it was in violation thereof. We are of the opinion that the record sufficiently establishes that the defense of inability to comply with the conditions of the agreed order is not available to defendant in this cause, and the trial court did not abuse its discretion by utilizing its contempt authority. To hold otherwise under the facts of this case would allow a party to enter an agreed order, thereby deferring decision on the merits, and then permit the violation of said order, which would render nugatory the salutary effects of such a disposition. See *People ex rel. Scott v. Janson,* 57 Ill.2d 451, 460.

Defendant has brought to our attention two other issues raised in the appellate court concerning its right to a jury trial and whether it was afforded procedural due process before it was adjudged in contempt. The appellate

court specifically declined to consider these matters. The parties have reiterated their respective arguments pertaining to these issues, which were presented before the appellate court, in their briefs filed herein and during the course of oral argument. Moreover, the record enables us to fully determine these matters. We will therefore consider defendant's contentions. *Schatz v. Abbott Laboratories, Inc.,* 51 Ill.2d 143, 145; *Vendo Co. v. Stoner,* 58 Ill.2d 289, 307.

We reject defendant's claim that it was entitled to a jury trial. While such a right is afforded to a contemnor in cases involving serious criminal contempts (*County of McLean v. Kickapoo Creek, Inc.,* 51 Ill.2d 353, 356), the right to a jury trial does not exist in civil contempt proceedings. *Shillitani v. United States,* 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627, 86 S. Ct. 1531; *Cheff v. Schnackenberg,* 384 U.S. 373, 377, 16 L. Ed. 629, 632, 86 S. Ct. 1523.

Defendant's argument relating to a denial of procedural due process is premised upon the events which transpired at the hearing conducted on July 26, 1971, that was initially set to consider defendant's motion to modify the terms of the agreed order and plaintiff's motion to enjoin operation of defendant's plant. Defendant maintains that it never received prior notice, pleadings or an opportunity to be heard on the matter of contempt and that the trial court's summary action in this regard was impermissible.

Defendant's motion for the modification of the agreed order conceded that it was unable to comply with the terms of the order. The hearing conducted on July 26, 1971, afforded a full opportunity for defendant to explain its noncompliance. Additional hearings were also conducted at which defendant fully participated. After consideration of the entire record, we conclude that defendant was not deprived of due process of law.

Accordingly, the judgment of the appellate court is

reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*