THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* LORA J. SMITH, Respondent-Appellant.

Third District    No. 81-486

Opinion filed December 3, 1981.

Jack C. Vieley, of Peoria, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Respondent Lora J. Smith was called to testify before the grand jury of Peoria County. Although she had previously received a grant of immunity pursuant to section 106—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 106—1), respondent refused to answer certain questions on the ground that her answers might tend to incriminate her under Federal law. In response to the State's subsequent petition for order to show cause, respondent, by affidavit, added the

additional ground of potential incrimination under the laws of five States. After a hearing on the merits of the petition, the circuit court of Peoria County found respondent in contempt of court and ordered her confinement in the county jail until she purged herself by testifying. On appeal, she contends the court erred in denying her a jury trial and in finding her in contempt.

■■■ Considering first the mode of trial, we note the right to a jury trial is afforded in cases involving serious criminal contempt but not in cases involving civil contempt. (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472.) Criminal contempts include acts in disrespect of the court or its process and those tending to bring the court into disrepute or obstruct the administration of justice, while civil contempts arise by failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court. (*People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736.) A further guide is the purpose of any imprisonment. Imprisonment for criminal contempt is inflicted as punishment for that which has been done, while imprisonment for civil contempt is usually coercive. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417.) As one court has stated, the civil contemnor "carries the key of his prison in his own pocket." *In re Nevitt* (8th Cir. 1902), 117 F. 448, cited in *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 410, 173 N.E.2d 417.

■■ In the case at bar, respondent was sentenced to an indefinite term in the county jail for her refusal to testify before the grand jury. Her incarceration was to continue until that time when she purged her contempt by testifying. The purpose of imprisonment appears to be to coerce respondent's testimony, and she does "carry the key" to the jail. Under these circumstances, we find the alleged contempt to be civil. Therefore, respondent was not entitled to a jury trial.

Considering second the finding of contempt, we note that respondent's contentions raise two issues. The first is whether her answers to the grand jury might tend to incriminate her under Federal law; the second, whether the answers might tend to incriminate her under the law of another State. Before turning to these questions, we consider the principles which must govern our decision today.

■■■ A grant of immunity seeks an accommodation between the right of the government to compel testimony and the constitutional privilege against self-incrimination. (*Kastigar v. United States* (1972), 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653.) As such an accommodation, it has long been recognized by the Supreme Court (*Counselman v. Hitchcock* (1892), 142 U.S. 547, 35 L. Ed. 1110, 12 S. Ct. 195, *disapproved on other grounds in Kastigar v. United States*) and the supreme court of this State

(*People v. Boyle* (1924), 312 Ill. 586) that in order for a grant of immunity to be adequate, the scope of such immunity must be co-extensive with the scope of that constitutional privilege. This guiding principle has been frequently reiterated. (See *Baxter v. Palmigiano* (1976), 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551; *Kastigar v. United States*; *Murphy v. Waterfront Com.* (1964), 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594; *Illinois Crime Investigating Com. v. Sarno* (1970), 45 Ill. 2d 473, 259 N.E.2d 267, *cert. granted* (1971), 401 U.S. 935, 28 L. Ed. 2d 214, 91 S. Ct. 918, *writ dismissed* (1972), 406 U.S. 482, 32 L. Ed. 2d 243, 92 S. Ct. 1677; *People v. Walker* (1963), 28 Ill. 2d 585, 192 N.E.2d 819; *People v. Rockola* (1931), 346 Ill. 27, 178 N.E. 284.) A second principle here involved is that the fifth amendment privilege against self-incrimination is applicable to the States under the due process clause of the fourteenth amendment, and the same standards must be employed in determining whether an individual's silence is justified on the basis of the privilege in Federal and State tribunals. *Malloy v. Hogan* (1964), 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489.

Turning now to the question of whether respondent's answers might tend to incriminate her under Federal law, we note the factual similarity of this cause to that in *Murphy v. Waterfront Com.* (1964), 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594. Having been granted immunity from prosecution under the laws of New York and New Jersey, the *Murphy* witnesses continued their refusal to testify on the ground that their answers might tend to incriminate them under Federal law and were held in civil contempt. Faced with the same question as the Federal issue herein, the *Murphy* court undertook an examination of the policies and purposes of the privilege against self-incrimination and concluded:

> "[W]e hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits.[18]
>
> ✿ ✿ ✿
>
> ✿ ✿ ✿

---

[18] Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Murphy v. Waterfront Com.* (1964), 378 U.S. 52, 79, 12 L. Ed. 2d 678, 695, 84 S. Ct. 1594, 1609.

Returning to the concept of a grant of immunity as an accommodation, it can be seen that, under the *Murphy* holding, the scope of

respondent's Federal immunity is coextensive with that of her constitutional privilege. As the Supreme Court has explained:

> "The privilege assures that a citizen is not compelled to incriminate himself by his own testimony. * * * [The immunity] statute, which operates after a witness has given incriminatory testimony, affords the same protection by assuring that the compelled testimony can in no way lead to the infliction of criminal penalties." (*Kastigar v. United States* (1972), 406 U.S. 441, 461, 32 L. Ed. 2d 212, 226, 92 S. Ct. 1653, 1665.)

This being the case, respondent was not entitled to claim her privilege against self-incrimination on the basis of violation of Federal law. No error was committed by the trial court in rejecting this claim of the respondent.

This brings us to the respondent's claim that the grant of immunity did not extend to potential prosecution in other States and consequently this potential prosecution justified her refusal to testify. As may be noted from the statement of facts, the respondent did not voice this objection during the grand jury proceeding when she declined to testify but raised it later in the contempt proceeding. Her failure to raise the objection at the earlier proceeding may well constitute a waiver of the issue. However, the issue was raised in and rejected by the trial court, so its discussion in this opinion would seem appropriate.

■■ We believe the trial court did not err when it declined to excuse the respondent's refusal to testify on grounds of potential prosecution in other States. To adopt the position of the respondent would require us to revitalize the rejected doctrine of *United States v. Murdock* (1933), 290 U.S. 389, 78 L. Ed. 381, 54 S. Ct. 223, and its companion cases. This doctrine, based on the concept of independent separate sovereignties, was rejected in the *Murphy* case as it applied to Federal-State grants of immunity. The logic of holding that Federal fifth amendment applications to the States mean that a grant of immunity by either State or Federal authority prevented prosecution by the other is equally applicable to similar relations between the States. Even though there may not now be any precedents dealing directly with this issue, the obligation of a sister State to respect the immunity from prosecution granted by another State is a matter of Federal constitutional law and not merely a matter of courtesy to be granted or withheld.

There are several practical considerations which offer some support for the notion that immunity granted by one State should preclude prosecution by another State. Where there may be prosecutions for violations of either Federal or State laws, this usually means the conduct took place across State lines and in fact may well have violated a Federal law as well as that of several States. If a State's grant of immunity was not broad

enough to cover immunity in a sister State, then in every such case prosecutions would have to be initiated under the Federal law since under the respondent's theory Federal granted immunity would be the only immunity broad enough to protect against all potential prosecutions. We do not believe the *Murphy* case countenances any such proposition.

Furthermore, if potential prosecution by a sister State were an appropriate reason for limiting the shield of immunity granted by a State, some effort would have to be undertaken to determine what laws of a sister State were subject to potential violation and prosecution. This in turn would require some evaluation of the effect of the questions and answers a function usually to be avoided in fifth amendment self-incriminatory cases. In passing we would also note that if conduct involved possible multistate criminal activities, the practical problems of securing grants of immunity from each State having some possible connection with the conduct would be immeasurable, without any significant benefits either to the States or to persons charged with criminal conduct. By holding as we do that the immunity granted by one State is sufficient to preclude prosecution by another State, we avoid such difficulties and harmonize the interest between the States to those between the Federal government and the States.

For the foregoing reasons the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

SCOTT, P. J., and BARRY, J., concur.