NOTICE
Decision filed 11/17/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200342-U

NO. 5-20-0342

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ANNE SCHLAFLY CORI and EAGLE FORUM, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 16-MR-111 |
| JOHN F. SCHLAFLY, | ) ) | Honorable David W. Dugan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in finding defendant John Schlafly in indirect civil contempt for failing to comply with provisions of an amended temporary restraining order that directed him to deliver (a) specific contacts lists, and (b) Eagle Forum corporate records. The trial court's order finding John Schlafly in statutory contempt for filing an affidavit in bad faith was not immediately appealable under Supreme Court Rule 304(b)(5) where the contempt order did not impose a penalty. The appellate court lacked jurisdiction under Supreme Court Rule 304 to consider Eagle Forum's cross-appeal in the absence of a Rule 304(a) finding.

¶ 2    Defendant John F. Schlafly appeals from orders of the trial court finding him in indirect civil contempt for failure to comply with provisions in a temporary restraining order and in statutory contempt for filing an affidavit in bad faith and for purposes of delay. For

1

the reasons that follow, the appeal from the order finding John Schlafly in statutory civil contempt is dismissed for lack of appellate jurisdiction under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), and the order finding John Schlafly in indirect civil contempt is affirmed in part and vacated in part. Eagle Forum's cross-appeal is dismissed for lack of appellate jurisdiction under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 3                                      I. BACKGROUND

¶ 4      This case arose out of a dispute over the ownership and control of the assets of Eagle Forum. Eagle Forum is a not-for-profit, tax-exempt organization under § 501(c)(4) of the Internal Revenue Code (26 U.S.C. § 501(c)(4) (2016)). It was founded by Phyllis Schlafly to advance conservative causes. The first four years of this litigation have been contentious, and the record on appeal is lengthy, containing over 25,000 pages. This appeal is limited to the propriety of the trial court's rulings on motions for indirect civil contempt against defendant John F. Schlafly. A discussion of the facts and procedural history are centered on those rulings.

¶ 5      When this litigation commenced in 2016, the plaintiffs, Anne Schlafly Cori (Cori), Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry, were serving as Directors of Eagle Forum.[1] Defendant John F. Schlafly (John) was the Treasurer and a Director of Eagle Forum. Defendant Edward R. Martin Jr. (Martin)[2] was the President of Eagle Forum. Martin was also the President of the Eagle Forum Education and

---

[1] These plaintiffs, collectively, are also referred to as the "Majority Directors."
[2] For clarity, we refer to Anne Schlafly Cori as "Cori," John F. Schlafly as "John," and Edward Martin Jr. as "Martin" throughout this disposition.

Legal Defense Fund (EFELDF).[3] Phyllis Schlafly, a nonparty, served as a Director, Chairman, and Chief Executive Officer of Eagle Forum until her death on September 5, 2016.

¶ 6                          A. The Rift in Eagle Forum's Leadership

¶ 7    According to the allegations in the original complaint, Martin was elected as President of Eagle Forum on January 31, 2015. During Martin's tenure as President, discord developed among Eagle Forum's national organization, its state affiliates, and its membership base, and a rift arose within the leadership of Eagle Forum. On March 29, 2016, Cathie Adams, Shirley Curry, and Eunie Smith mailed a notice to all of the directors of Eagle Forum, advising them that a meeting would be held by teleconference on April 11, 2016.

¶ 8    On April 9, 2016, Martin emailed more than 41,000 individuals, using a "contacts list" that Eagle Forum often used for its mass mailings. In the email, Martin claimed that six directors of Eagle Forum were going to hold a "rogue meeting." He implored the email recipients to urge those directors not to "hijack" Eagle Forum for their own purposes. That same day, the plaintiffs received a letter, ostensibly from Phyllis Schlafly, asking them to resign their positions immediately. On April 10, 2016, the plaintiffs received a letter from the Runnymede Law Group. Runnymede stated that it had been retained as legal counsel

---

[3]Eagle Forum Education and Legal Defense Fund is a not-for-profit, tax-exempt entity under § 501(c)(3) of the United States Code (26 U.S.C. § 501(c)(3) (2016)). This organization was referred to as "EFELDF" in the trial court and that designation will be retained in this disposition for consistency.

for Eagle Forum, and it directed the plaintiffs to stop acting in violation of their fiduciary duties to Eagle Forum.

¶ 9 On April 11, 2016, the Eagle Forum Board of Directors met via teleconference. The plaintiffs were on the call. Phyllis Schlafly and John were also present, but the other three directors, Andy Schlafly, Kathleen Sullivan, and LaNeil Wright Spivy, were absent. Martin was also on the call. According to the Eagle Forum Bylaws, the presence of 6 of the 11 directors constituted a quorum. When the Board moved into executive session, Martin was not allowed to participate because he was not a director. During the executive session, a majority of the Board members approved a motion to immediately terminate Martin as President of Eagle Forum. The majority members also approved motions to terminate the Runnymede Law Group as legal counsel for Eagle Forum, revoke all signatories on Eagle Forum financial accounts, and conduct an audit of Eagle Forum assets. All motions passed by a margin of 6-2, with the plaintiffs voting in favor of each motion, and John and Phyllis Schlafly objecting to and opposing each motion. Immediately after the Board meeting, Runnymede Law Group was notified that it no longer represented Eagle Forum, and Martin and the Eagle Forum staff were notified that Martin had been terminated from his role as President of Eagle Forum.

¶ 10 On April 22, 2016, the plaintiffs filed a verified complaint against defendants John, Martin, and Eagle Forum.[4] The plaintiffs alleged that John and Martin refused to

_____

[4]Eagle Forum was sued as a nominal defendant. Eagle Forum was later realigned as a party plaintiff and was given leave to file its own complaint in this action. Eagle Forum Education and Legal Defense Fund, Eagle Trust Fund, Phyllis Schlafly's American Eagles, the Estate of Phyllis Schlafly, Andrew Schlafly, Bruce Schlafly, and Kathleen Sullivan were added as party defendants.

4

acknowledge Martin's termination as President of Eagle Forum, and that John and Martin prevented the plaintiffs from gaining access to Eagle Forum documents, financial accounts, contact lists, websites, and related passwords. The plaintiffs further alleged that Martin used Eagle Forum social media accounts to disseminate disinformation about the April 11, 2016, meeting of the Eagle Forum Board of Directors. The plaintiffs claimed that defendants' actions harmed the name and reputation of Eagle Forum.

¶ 11 The complaint contained counts alleging that John and Martin breached their fiduciary duties to Eagle Forum, its members, donors, and officers (counts I and II), and colluded to prevent the Majority Directors from fulfilling their fiduciary duties to Eagle Forum (count III). The complaint also contained a count for accounting of Eagle Forum's property (count IV) and a count for a judgment declaring that the April 11, 2016, meeting of the Eagle Forum Board of Directors was properly noticed and that all motions approved during the meeting were valid and lawful (count V). Finally, the plaintiffs sought to enjoin John and Martin from interfering with the plaintiffs' efforts to perform their obligations to Eagle Forum (count VI).

¶ 12 John and Martin filed an answer and denied the main allegations of the plaintiffs' complaint. They also filed affirmative defenses, asserting that the April 11, 2016, meeting of the Eagle Forum Board violated the organization's bylaws and that any actions taken by the Majority Directors were *ultra vires* and a breach of their fiduciary duties. Martin and John also filed a counterclaim seeking declaratory and injunctive relief.

¶ 13 B. The Amended TRO and Contempt Proceedings

5

¶ 14 On April 25, 2016, the plaintiffs filed a motion for a temporary restraining order against John and Martin. Following a hearing on April 29, 2016, the trial court issued a temporary restraining order (TRO). The TRO was issued to restrain John and Martin from blocking the plaintiffs' access to "the Illinois Headquarters and any and all property of Eagle Forum 501(c)(4) located thereon or elsewhere." The court also revoked all prior signatories on Eagle Forum accounts. The court placed signatory authority for those accounts with Cori, Smith, and Phyllis Schlafly, and required all three to sign any instrument of deposit or withdrawal.

¶ 15 On September 29, 2016, the plaintiffs filed an emergency motion to amend the TRO. The plaintiffs claimed that changes had been made to content on Eagle Forum's website and that the registered owner of Eagle Forum's domain name had been changed without their authorization. While awaiting a hearing date, the plaintiffs filed a supplemental pleading alleging that John and Martin continued to deny the plaintiffs access to Eagle Forum property, and thereby threatened the status quo.

¶ 16 Following a hearing on October 20, 2016, the trial court issued an amended temporary restraining order (Amended TRO). The court found that John and Martin continued to deny the plaintiffs access to the property and assets of Eagle Forum, including membership lists, mailing lists, and databases or other lists used by Eagle Forum for mass mailings, emails, and robocalls. The court also found that John and Martin made changes to the content on the Eagle Forum website and changed the registered owner of Eagle Forum's domain name to Eagle Trust Fund, and then to Roger Schlafly, without the knowledge or authorization of the Eagle Forum Board. The court further found that John

6

and Martin had demonstrated an unwillingness or incapacity to serve the best interests of Eagle Forum. The court concluded that allowing John and Martin "to continue to use, access, control, transfer and or modify Eagle Forum property and resources" was detrimental to the status quo and contrary to the court's desire to protect and preserve the assets of Eagle Forum pending a resolution of the case on the merits.

¶ 17    In the Amended TRO, the court directed that the plaintiffs, as Majority Directors of Eagle Forum, "shall immediately assume temporary sole control and possession over all Eagle Forum property," including but not limited to:

- (1) the *eagleforum.org* domain name and website;

- (2) all email addresses using the domain name "@eagleforum.org";

- (3) all Eagle PayPal and social media accounts;

- (4) all usernames, passwords, passcodes, identification numbers, software and/or information used to obtain access to and/or control of any Eagle Forum property, accounts, and software;

- (5) the contact list of 14,000 active members of Eagle Forum, the contact list of 41,000 emails used by Eagle Forum for purposes of mass emails, in a useable electronic format, and any other lists used by Eagle Forum in its day-to-day operations prior to April 11, 2016;

- (6) all Eagle Forum electronic and hard copy files, books, records, or other documents, including records of the names and contact information for all Eagle Forum donors and members, including the history and amounts of donation;

7

- (7) all life insurance policies and related documentation;

- (8) all stock, investment, savings, checking, credit, and lending accounts; and

- (9) all credit cards, check books, and blank checks associated with the accounts.

In the Amended TRO, the court referred to the enumerated items collectively as "Eagle Forum Property."

¶ 18    The court further ordered that Eagle Forum should continue to transact business with Eagle Trust Fund (ETF) and EFELDF, as it had in the past, provided that such transactions did not violate Illinois and federal law, Eagle Forum Bylaws, or orders of the court. The court directed that within 48 hours of its order, the defendants and all those acting in concert with them "shall complete the transfer of all Eagle Forum Property" to the plaintiffs and "cooperate in good faith" with the plaintiffs' efforts to assume immediate control and possession of all Eagle Forum Property. The court enjoined the defendants, and those acting in concert with them, from "using, accessing, controlling, transferring, copying, destroying or modifying any Eagle Forum Property" without the prior written authorization of the plaintiffs.

¶ 19    The court also suspended Martin from his position as President of Eagle Forum and John from his position as Treasurer of Eagle Forum. Phyllis Schlafly was removed as a signatory on all Eagle Forum accounts. John and Martin were ordered to reverse any changes made to the Eagle Forum website and to restore Eagle Forum as the registered owner of the Eagle Forum domain name. The court authorized the plaintiffs to terminate Eagle Forum's legal counsel and retain independent legal counsel for Eagle Forum. The court named Eunie Smith as acting President of Eagle Forum and Cori as acting Chairman

8

of Eagle Forum, and gave them exclusive authority to communicate with any third party about the Eagle Forum® mark and Eagle Forum® registration. The Amended TRO was signed and filed on October 20, 2016.

¶ 20   On October 24, 2016, with the ink barely dry on the Amended TRO, the plaintiffs filed a motion seeking an order to show cause why John and Martin should not be held in contempt. The plaintiffs alleged that John and Martin had failed to transfer any Eagle Forum property to them within 48 hours after the Amended TRO was issued. The plaintiffs asked the court to find John and Martin in contempt and to order appropriate sanctions against them.

¶ 21   On December 15, 2016, Eagle Forum filed a motion for civil contempt against John and Martin, alleging a failure to comply with the Amended TRO. Specifically, Eagle Forum alleged that John and Martin failed to transfer a single piece of Eagle Forum property to the plaintiffs; failed to turn over access, materials, and information regarding the Washington, D.C., office; and failed to turn over financial information necessary to Eagle Forum's compliance with Federal Election Commission filings. Eagle Forum also alleged that John and Martin sent mass correspondence to Eagle Forum members without Eagle Forum's authorization. Eagle Forum asked the court to impose sanctions on John and Martin under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), including striking their pleadings and awarding attorney fees to Eagle Forum. On January 26, 2017, Eagle Forum filed a supplemental motion for contempt against Martin and John and alleged additional violations of the Amended TRO.

¶ 22   On February 9, 2017, the court entered an order, as agreed to by the parties, directing that the electronic version of Eagle Forum's QuickBooks accounts, board minutes, corporate records, and tax records for all years available be delivered to plaintiffs that day (February 9, 2017). The court further ordered that all Eagle Forum checks and checkbooks, all financial and bank statements, all board minutes and corporate records, and all mail addressed to Eagle Forum be delivered to the plaintiffs on or before February 10, 2017. Computer equipment and credit cards records were to be delivered to the plaintiffs within 14 days of the order.

¶ 23   On April 18, 2017, Eagle Forum filed second and third supplemental motions for civil contempt against John. Eagle Forum asserted that John failed to return Eagle Forum property in violation of the Amended TRO and the order of February 9, 2017, and that John continued to represent that he was associated with Eagle Forum. Eagle Forum also filed a second supplemental motion for civil contempt against Martin, and asserted that in media, letters, and emails, Martin continued to represent that he was associated with Eagle Forum.

¶ 24   All pending motions for contempt were called for hearing on June 19, 2018, and June 20, 2018. Following two days of testimony, the parties agreed to an order regarding some of the disputed property, and the contempt proceedings were continued. The agreed order was approved by the trial court and issued on August 22, 2018. Under the order, Eagle Forum would obtain possession of and/or access to various items of property which had been the subject of the contempt proceedings. The parties expressly agreed that nothing contained within the order "was intended or should be construed as ruling on the pending contempt motions or requests for sanctions," and no party was "giving up, waiving, or

relinquishing any rights they may have" under any pending motions, including the contempt motions.

¶ 25                    C. Cori's Motion for Statutory Contempt

¶ 26    On January 10, 2020, Cori filed a motion for partial summary judgment as to count XX of the fifth amended complaint brought against John, Bruce Schlafly, and EFELDF. Cori sought a judgment declaring that the April 8, 2016, meeting of the EFELDF Board of Directors was held in violation of the notice requirements of the EFELDF's Bylaws, and that any actions taken during the meeting were invalid.[5] In support of the motion, Cori attached a copy of the EFELDF Bylaws and an email, dated April 7, 2016, indicating that a special meeting of the EFELDF's Directors would be held on April 8, 2016.

¶ 27    On January 23, 2020, EFELDF filed a response in opposition to Cori's motion for partial summary judgment, and John and Bruce Schlafly joined in that response. EFELDF asserted that Cori had been removed during the annual meeting of the Board of Directors on September 18, 2016. EFELDF stated that it had never taken the position that Cori had been removed from the Board during an informal telephone conversation on April 8, 2016. EFELDF attached a supporting affidavit from John. In the affidavit, John averred:

---

[5]According to count XX of the fifth amended complaint, Martin sent an email on April 7, 2016, scheduling a meeting of the EFELDF Board of Directors for the following morning. On April 8, 2016, the EFELDF Board of Directors convened a meeting via teleconference. Cori, then an EFELDF Director, was on the call and objected because the meeting was convened without seven days' notice as required by the EFELDF Bylaws. Cori's objection was noted, but the Board proceeded to conduct business, including voting for Cori's replacement on the Board of Directors.

"3. On April 8, 2016, certain members of the Board of EFELDF, myself included, engaged in informal conversation amongst themselves.

4. EFELDF understood that the April 8, 2016, informal conversation did not constitute a meeting of the Board of the Directors of EFELDF, and thus EFELDF has taken no subsequent actions following and relying upon the April 8, 2016, conversation."

¶ 28   On January 27, 2020, Cori filed a reply with supporting documents. Cori attached an audio recording and typed transcript of the Board meeting on April 8, 2016.

¶ 29   On February 10, 2020, the trial court granted Cori's motion for partial summary judgment. In its order, the court declared that the EFELDF meeting on April 8, 2016, was "deemed" to have been conducted in violation of EFELDF's then-existing bylaws, that the actions taken during the April 8, 2016, meeting were deemed invalid actions, and that Cori remained a director of EFELDF "at least until September 18, 2016."

¶ 30   On February 20, 2020, Cori filed a motion asking the court to find John and EFELDF in statutory contempt pursuant to section 2-1005(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(f) (West 2018)), for filing an affidavit in bad faith and for purposes of delay. Cori alleged that John's affidavit, filed in support of EFELDF's opposition to her motion for partial summary judgment, contained  false and misleading statements regarding the nature of the EFELDF meeting on April 8, 2016. She sought an award of attorney fees and expenses pursuant to the terms of the statute.

¶ 31                     D. The Contempt Order

¶ 32   From August 3, 2020, through August 10, 2020, the trial court conducted additional evidentiary hearings on the show cause and contempt motions filed by the plaintiffs, Eagle Forum, and Cori. After considering six days of sworn testimony, more than 600 pages of

12

deposition testimony, and more than 2000 pages of exhibits, the court issued a 28-page order (Contempt Order) containing the trial court's rulings and reasoning.

¶ 33    The trial court initially addressed the show cause motion filed by the plaintiffs on October 24, 2017. The court found that John and Martin failed to turn over Eagle Forum property to the plaintiffs within 48 hours after the entry of the Amended TRO, but concluded that their inaction was excusable. The court pointed to testimony indicating that John and Martin believed that the attorneys who represented them in their capacities as officials of Eagle Forum intended to seek a stay of the Amended TRO. Subsequently, those attorneys, who also represented Eagle Forum, did not seek a stay or an appeal of the Amended TRO. The court concluded that John and Martin offered a reasonable excuse for their initial noncompliance and denied the plaintiffs' show cause motion.

¶ 34    The trial court next addressed Eagle Forum's pending contempt motions against John and Martin.[6] After reviewing the evidence, the court found John in indirect civil contempt because of his willful and inexcusable failure (a) to produce to Eagle Forum the list of 14,000 Eagle Forum members and the contact list of 41,000 emails used by Eagle Forum for mass emails; (b) to timely produce Eagle Forum's tax returns, financial statements, checks, and bank records; and (c) to turn over the keys and a garage door opener to the office in Washington, D.C. The court concluded that there was insufficient evidence

---

[6]These included the motion for contempt against John and Martin filed December 15, 2016; the supplemental motion against John and Martin filed January 26, 2017; the second supplemental motion against Martin filed April 18, 2017; the second supplemental motion against John filed April 18, 2017; and the third supplemental motion against John filed April 18, 2017.

to find that John violated the Amended TRO pertaining to Eagle Forum's domain name, website, and associated email addresses.

¶ 35 After finding John in indirect civil contempt, the court ordered that "John Schlafly, consistent with the Court's Order of October 20, 2016, shall within twenty-one (21) days of the date of this order:

1. Provide and cause to be delivered to Anne Cori as a member of the Board of Directors of Eagle Forum, an electronic (in a common format such as .pdf) or hard copy of any and all of the approximately 14,000 Eagle Forum members' contact, leader, and donor lists referred to in this Court's Order of October 20, 2016. This paragraph should not be construed or interpreted to mean that this Order determines that Eagle Forum, Eagle Trust Fund or EFELDF has an interest in any such list or information contained therein that is superior to that of any other person or entity.

2. Provide and cause to be delivered to Anne Cori as a member of the Board of Directors of Eagle Forum any all corporate records for Eagle Forum including any and all financial accounting records, tax returns and associated and supporting documents, bank account statements, checks (including uncancelled instruments), financial statements, by-laws, and other corporate documents in his actual or constructive possession regardless of whether such item of property is held or is claimed by to be held by him personally, as a trustee of Phyllis Schlafly Revocable Trust or as a member of Eagle Trust Fund.

3. Provide and cause to be delivered to Anne Cori as a member of the Board of directors of Eagle Forum any and all passwords, usernames, passcodes, identification numbers and necessary access information in any format relative to or otherwise necessary to access or control *Eagleforum.org*, its website, or email accounts associated with or pointed to by *Eagleforum.org*.

4. Provide and cause to be delivered to Anne Cori as a member of the Board of directors of Eagle Forum any and all passwords, usernames, passcodes, identification numbers and necessary access information relative to *Eagleforum.org*'s domain registration and renewal with any hosting service provider including, but not limited to, GoDaddy, Host Monster, and Network Solutions.

5.    Provide and cause to be delivered to Anne Cori as a member of the Board of Directors of Eagle Forum any and all letters, emails, correspondence, certificates, and any and all other documents relative to the Eagle Forum® mark."

¶ 36    The court also directed John to file an affidavit attesting to his compliance with the order. The Contempt Order included the following penalty provision in the event John failed to comply:

"It is further ordered that for each day that John Schlafly shall fail to timely comply with as [*sic*] aspect of this order, John Schlafly shall be personally assessed a sanction of $250.00 per day. In the event that John Schlafly shall fail to comply with this order for a period of thirty (30) days from the date of this Order, he may be thereafter confined in the Madison County Jail and remain in the custody of the Madison County Sheriff until he complies with this Order."

¶ 37    The trial court then considered the contempt allegations against Martin. The court found Martin in contempt of the Amended TRO because of his use of the list of the 14,000 active Eagle Forum members and the contact list of 41,000 emails used by Eagle Forum for mass emails. The court did not find Martin in contempt for his refusal to turn over domain names, domain hosts, and associated email lists. The court also determined that the evidence was not sufficient to show that Martin held himself out as a representative of Eagle Forum, as alleged.

¶ 38    The court indicated that it would order John and Martin to pay the reasonable attorney fees and expenses that Eagle Forum incurred in preparing and presenting those motions in which contempt was established. Eagle Forum was directed to file its claim for fees and expenses, along with supporting documentation, within 21 days of the order.

¶ 39    The trial court next considered Cori's motion to find John and EFELDF in statutory civil contempt for filing a false affidavit. The court examined the transcript of the April 8,

15

2016, meeting and concluded that the descriptions in John's affidavit, depicting the meeting as an "informal conversation," were "at odds" with the transcript. The court noted that Phyllis Schlafly had thanked the EFELDF Directors for "coming to our first time ever telephone board meeting," that roll call was taken, and that motions were made and voted upon, including a motion to replace Cori as Treasurer of EFELDF. The court further noted that the activities of the EFELDF Directors on April 8, 2016, were nothing like those typically witnessed during "informal conversations." The court found that John's characterization of the April 8, 2016, meeting, as set forth in his affidavit, was not "simply bad judgment or negligence," but rather "the conscious doing of a wrong because of a dishonest purpose." The court concluded John's affidavit "was made for the purpose of delay and was, in fact, made in bad faith." The court adjudged John in civil contempt as authorized by section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018)) and indicated that it would order John to pay the reasonable expenses, including attorney fees, that Cori incurred in filing and prosecuting her motion.

¶ 40    All other contempt allegations not specifically discussed in the Contempt Order were denied. Cori filed her motion for attorney fees and expenses on October 2, 2020. Eagle Forum filed its petition for attorney fees and expenses on October 13, 2020.

¶ 41    On October 15, 2020, John filed an affidavit averring that he "fully and completely complied" with the Contempt Order by causing to be delivered all of the items that were in his actual or constructive possession as of the date he signed the affidavit. Specifically, John stated that he caused to be delivered the lists described in paragraph 1, the records and documents described in paragraph 2, and the documents and communications

16

described in paragraph 5. John further stated that he did not "actually or constructively possess, nor have access to," any of the items described in paragraphs 3 and 4 of the Contempt Order.

¶ 42   On October 19, 2020, John filed his notice of appeal from the Contempt Order pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). On October 29, 2020, Eagle Forum and Cori filed separate motions to dismiss John's appeal for lack of appellate jurisdiction under Rule 304(b)(5). Eagle Forum also filed a notice of cross-appeal in the event its motion to dismiss the appeal was denied.

¶ 43                                II. ANALYSIS

¶ 44   On appeal, John claims that the trial court abused its discretion in finding him in indirect civil contempt for noncompliance with the Amended TRO. John also claims the court erred in finding him in statutory contempt under section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018)), because the affidavit he filed in opposition to Cori's motion for partial summary judgment was not submitted in bad faith or for purposes of delay.

¶ 45                          A. Appellate Jurisdiction

¶ 46   In this case, the Contempt Order did not fully dispose of the proceedings and the case remains pending in the trial court. John filed this appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). Cori and Eagle Forum filed separate motions to dismiss the appeal. Each argues that appellate jurisdiction is lacking under Rule 304(a)(5) because the trial court did not impose a penalty after finding John in contempt.

17

¶ 47   Illinois Supreme Court Rule 304 governs appeals from final judgments that do not dispose of the entire case. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Under Rule 304(a), "an appeal may be taken from a final judgment as to one or more but fewer than all parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Rule 304(b) contains exceptions to the special finding requirement in paragraph (a) of the rule. Under Rule 304(b)(5), "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without a Rule 304(a) finding. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). An order that finds an individual in contempt without imposing a penalty is not final and not reviewable. *In re Estate of Hayden*, 361 Ill. App. 3d 1021, 1026 (2005); *Vowell v. Pedersen*, 315 Ill. App. 3d 665, 666 (2000).

¶ 48   The trial court found John in civil contempt under section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018))[7] for filing an affidavit in bad faith and for purposes of delay. The court determined that Cori was entitled to recover reasonable attorney fees and expenses associated "with countering the false affidavit" and prosecuting her motions for contempt, but the court did not impose a specific penalty, and the court did not make a Rule 304(a) finding. Cori filed a fee petition, and that petition was pending when John filed his notice of appeal. Because the amount of the fees was to be assessed in the future and

---

[7]Section 2-1005 provides that when "it appears to the satisfaction of the court at any time that any affidavit presented pursuant to this Section is presented in bad faith or solely for the purpose of delay, the court shall without delay order the party employing it to pay the other party the amount of reasonable expenses which the filing of the affidavit caused him or her to incur, including reasonable attorney's fees, and any offending party may be adjudged guilty of contempt." 735 ILCS 5/2-1005(f) (West 2018).

because the contempt order imposed no specific fine or penalty, we do not have jurisdiction under Rule 304(b)(5) to consider John's appeal from the statutory civil contempt order. *Pedigo v. Youngblood*, 2015 IL App (4th) 140222, ¶ 17. Therefore, John's appeal from the trial court's finding of statutory contempt is dismissed for lack of jurisdiction.

¶ 49 Next, we consider whether we have jurisdiction under Rule 304(b)(5) to consider the trial court's findings of indirect civil contempt against John. According to the record, the trial court found John in indirect civil contempt for failing to comply with provisions in the Amended TRO. The court then ordered John to deliver several items of property to Eagle Forum within 21 days of the order. The court further ordered that "for each day that John Schlafly shall fail to timely comply" with any aspect of this order, he shall be assessed a sanction of $250 per day. If John failed to comply with the order for a period of 30 days from the date of the order, he could have been "confined" in the Madison County jail until he complied. Thus, the trial court imposed a continuing and indefinite penalty of $250 per day, and possible incarceration, but delayed enforcement for 21 days to allow John to purge the contempt.[8] Accordingly, we have jurisdiction under Rule 304(b)(5) to consider that portion of the contempt order.

¶ 50 In respective motions to dismiss, Cori and Eagle Forum sought sanctions under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), arguing that this appeal was not justified under existing law. The imposition of sanctions under Rule 375 is a matter within the discretion of the reviewing court. *Henby v. White*, 2016 IL App (5th) 140407, ¶ 28.

---

[8]Based on an affidavit executed on October 15, 2020, John complied with the contempt order, but he did so after the 21-day deadline had passed.

19

After reviewing the record and the arguments on appeal, we do not find that sanctions are warranted. Therefore, the requests by Cori and Eagle Forum for Rule 375 sanctions are denied.

¶ 51                    B. Indirect Civil Contempt and the Amended TRO

¶ 52    On appeal, John claims that the trial court abused its discretion in finding him in indirect civil contempt for noncompliance with the Amended TRO. John argues that the Contempt Order should be vacated because it primarily served to punish him for past noncompliance, rather than to coerce future compliance. John contends that the trial court failed to consider whether there was a current need for enforcement of the Amended TRO, and whether it was possible for him to purge the contempt. John claims that much of the property identified in the Amended TRO was turned over before the Contempt Order was issued. He claims that he was unable to turn over other property because it was not under his control.

¶ 53    Civil contempt orders are designed to compel a contemnor to perform a specific act or acts. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 46 (1990). Civil contempt sanctions are prospective in nature and invoked to coerce compliance with the court's order. *Betts*, 200 Ill. App. 3d at 43. In civil contempt proceedings, the contemnor must be capable of taking the action sought to be coerced, and no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent order. *Betts*, 200 Ill. App. 3d at 43. A sanction must be vacated when it becomes evident that the sanction is no longer fulfilling its coercive function. *Hayden*, 361 Ill. App. 3d at 1029. The contemnor bears the burden to

20

show that the sanction has lost its coercive effect and will not cause him to comply with the order. *Hayden*, 361 Ill. App. 3d at 1029-30.

¶ 54 In a civil contempt proceeding, the burden of proving contempt is on the party bringing the motion, and the contempt must be proven by a preponderance of the evidence. *Harper v. Missouri Pacific R.R. Co.*, 282 Ill. App. 3d 19, 28 (1996). Noncompliance with an order is *prima facie* evidence of civil contempt. *In re Estate of Baldassarre*, 2018 IL App (2d) 170996, ¶ 36. Once noncompliance is established, the burden shifts to the contemnor to establish that he did not have the means or ability to comply with the order. *Baldassarre*, 2018 IL App (2d) 170996, ¶ 36; *County of Cook v. Lloyd A. Fry Roofing Co.*, 59 Ill. 2d 131, 137 (1974). The defense of inability is unavailable, where a contemnor has voluntarily created the inability to comply. *Fry Roofing*, 59 Ill. 2d at 137. It is the trial court's function to weigh the evidence, judge the credibility of the witnesses, and make findings of fact. *Harper*, 282 Ill. App. 3d at 28-29. Whether a party's conduct is contemptuous is within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's adjudication of contempt absent an abuse of discretion. *People v. Cole*, 2017 IL 120997, ¶¶ 19-20.

¶ 55 The trial court found John in indirect civil contempt because of his willful and inexcusable failure (a) to produce the list of 14,000 Eagle Forum members and the contact list of 41,000 emails used Eagle Forum for mass emails; (b) to timely produce Eagle Forum's tax returns, financial statements, checks, and bank records; and (c) to turn over the keys and a garage door opener to the Washington, D.C., office. In its order, the court provided the factual basis and reasons for each finding of contempt.

21

¶ 56    The trial court initially considered whether John complied with the order to turn over the contact list of 14,000 Eagle Forum members and at least some of the contact lists of 41,000 emails used by Eagle Forum for purposes of sending mass emails. During the contempt proceedings, John admitted that he did not turn over the contact lists at issue. John explained that there were no actual "lists," but instead, a much larger database that contained information regarding members, donors, and leaders. He testified that the Phyllis Schlafly Revocable Trust (PSRT) had asserted ownership in the database, and that ETF was the custodian of the database. John claimed that he was unable to comply with the Amended TRO because he was neither the owner nor the custodian of the database and had no control over it. John also claimed that extracting Eagle Forum information from the larger database would be a difficult task.

¶ 57    The trial court was not persuaded by John's contention that he could not comply with the court's order. The court observed that John was the sole trustee of PSRT and that he was one of two members of ETF. John had not asked the trial court for relief due to an inability to perform because of his fiduciary responsibilities to PSRT and his lack of control over the database. John had not asked for additional time to complete the task of extracting the Eagle Forum information from the larger database. The court pointed out that John and Martin had submitted affidavits, dated April 26, 2016, in which they averred that Eagle Forum and EFELDF jointly maintained proprietary membership, donor, contact lists. The court concluded, therefore, that "John simply did not want to produce the list information and data and was willing to withhold it" despite the directive in the Amended TRO. The court found that John's failure to comply with the order to produce the lists was "willful

22

and without reasonable excuse," and held him in indirect civil contempt. John was ordered to deliver an electronic or hard copy of the contact lists of the members, donors, and leaders referred to in the Amended TRO, and the court imposed a conditional sanction on John to coerce his compliance.

¶ 58   In this case, John had the burden to demonstrate a legitimate inability to comply with the Amended TRO. *People v. Johnson*, 2017 IL App (1st) 162876, ¶ 20; *Killion v. City of Centralia*, 381 Ill. App. 3d 711, 715 (2008). After evaluating the credibility of the witnesses and weighing the evidence, the trial court reasonably concluded that John failed to demonstrate a legitimate inability to comply with that order. The trial court also concluded there was a need to enforce the Amended TRO.

¶ 59   In this appeal, John argues that by the time the September 21, 2020, Contempt Order was entered, the reason for ordering production of the lists had been resolved. John contends that the trial court denied Eagle Forum's claim to ownership of the lists in an order entered August 4, 2020, and as a result, the provision in the Amended TRO requiring delivery of the lists should have been deemed to have no further legal effect. He further contends that once the provision requiring delivery of the lists expired, there was no basis for holding him in indirect civil contempt. We disagree with John's underlying premise. In the order of August 4, 2020, the trial court found that Eagle Forum failed to meet the burden of proof necessary to award a declaratory judgment or a summary judgment in its favor on the issue of ownership of the lists. When the trial court ordered John to produce the lists in the Contempt Order, the court specifically stated that its order should not be construed as determining "that Eagle Forum, Eagle Trust Fund or EFELDF has an interest in any such

23

list or information contained therein that is superior to any other person or entity." In other words, the trial court had not yet decided the issue regarding ownership of the lists. The Amended TRO did not "expire." John was required to comply with its terms. Our courts have the power to preserve the status quo of the parties and the subject matter of the litigation until a final determination is made. When John was ordered to deliver the contact lists, the trial court had not made a final decision regarding ownership of the lists.

¶ 60    The purpose of the Contempt Order was to compel future compliance through the production of the information in the above referenced contact lists. In an affidavit of compliance dated October 15, 2020, and accompanying letter of transmittal, John indicated that a flash drive containing the lists described in paragraph 1 of the Contempt Order had been delivered to Eagle Forum. Thus, John's contention that the Contempt Order failed to identify any current contempt from which John could purge himself is not supported by the record. After reviewing the record, we find that the trial court did not abuse its discretion in finding John in indirect civil contempt for failing to produce the contacts list information.

¶ 61    The trial court also held John in indirect civil contempt for his failure to deliver the Eagle Forum tax returns, financial statements, checks, and bank records in a timely manner. The court noted that there was evidence to show that John was the Treasurer of Eagle Forum from 2000 until 2016, and that as Treasurer, John had ready access to the financial and corporate documents of Eagle Forum. The court further noted that during testimony, John admitted that he failed to produce all of the documents in a timely fashion. In addition, documentary evidence revealed that financial statements, tax returns, and electronic files had not been provided to Eagle Forum until approximately 20 months after the Amended

24

TRO was issued. Again, the trial court observed that John did not ask for additional time to produce the documents or any other relief. The court concluded that John's failure to timely comply with its order "strongly" suggested that his conduct was willful. The court found John in indirect civil contempt and ordered him to deliver to Eagle Forum any and all corporate records of Eagle Forum, including financial, accounting records, and tax records, in his actual or constructive possession.

¶ 62    Paragraph 2 of the Contempt Order required John to deliver all corporate, financial, and tax records in John's actual or constructive possession. In his affidavit of compliance dated October 15, 2020, John stated that he turned over all of the documents and communications described in paragraph 2 of the Contempt Order. Again, John's contention that the Contempt Order failed to identify any ongoing contempt from which John could purge himself is incorrect. The purpose of the Contempt Order was to compel future compliance through the production of the Eagle Forum records in John's possession. After reviewing the record, we do not find that the trial court abused its discretion in finding John in indirect civil contempt for failing to deliver Eagle Forum's corporate, financial, and tax records to Eagle Forum.

¶ 63    The trial court also found John in indirect civil contempt for failing to provide Eagle Forum with a garage door opener and keys to an office in Washington, D.C. During the hearing, John testified that EFELDF and ETF were the leaseholders on the property, and that an EFELDF employee delivered the keys and garage door opener to the landlord of the property. John thought the keys should be given to the landlord, rather than to Eagle Forum. The trial court found that Eagle Forum offered two documents that rebutted John's

25

testimony. These documents demonstrated that Eagle Forum was the leaseholder of the property, and that Eagle Forum sublet a portion of that property to EFELDF and ETF.

¶ 64 John also argued that the trial court should not hold him in contempt for refusing to provide access to the D.C. office, because it was no longer possible to purge the contempt. John pointed out that the lease expired on January 31, 2017, more than 3½ years before the contempt finding, and that Eagle Forum admitted that the D.C. office was "no longer leased by Eagle Forum." The trial court recognized that the refusal to return the keys and opener to Eagle Forum was arguably of little importance at that point, except to illustrate an ongoing disregard for the court's orders and authority. The court found that John's failure to deliver the keys and opener, coupled with his delay in turning over other items of property as required, demonstrated a "level of willfulness more than adequate to support an order of contempt." The court found John in willful contempt for failing to turn return the keys and door opener to Eagle Forum as required.

¶ 65 Civil contempt is intended to provide a coercive penalty to compel future compliance, and a valid purge condition is a necessary part of an indirect civil contempt order. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007); *Betts*, 200 Ill. App. 3d at 46. The contemnor must be capable of taking the action sought to be coerced, and the sanction must be vacated when it is no longer fulfilling its coercive function. *Hayden*, 361 Ill. App. 3d at 1029. While we understand the trial court's view that John's conduct was an illustration of his seeming disregard for the court's authority, the record demonstrates that John did not have the ability to purge himself of this violation of the Amended TRO. As a result, the trial court erred in finding that John was in indirect civil contempt for failing to deliver the

26

keys and garage door opener to Eagle Forum, and that finding is hereby vacated. *Felzak*, 226 Ill. 2d at 391-92.

¶ 66                    C. Eagle Forum's Cross-Appeal

¶ 67    In a cross-appeal, Eagle Forum challenged the trial court's finding that John was not in indirect civil contempt for failing to turn over domain names, domain hosts, and associated emails. Eagle Forum also challenged the trial court's findings that defendant Martin was not in indirect civil contempt of the Amended TRO relative to holding himself out as an Eagle Forum representative and failing to deliver domain names, domain hosts, and associated emails. These rulings are interlocutory in nature. They are not final and appealable under Supreme Court Rule 304(b)(5), and absent an express written finding under Supreme Court Rule 304(a), we are without jurisdiction to consider them. Accordingly,  Eagle Forum's cross-appeal is dismissed for lack of appellate jurisdiction.

¶ 68    Finally, during the briefing of this appeal, John filed a motion to strike a separate appendix filed by Eagle Forum, and Eagle Forum filed a response in opposition to the motion to strike. The motion was taken with the case and is hereby denied.

¶ 69                         III. CONCLUSION

¶ 70    In summary, we find that the trial court did not abuse its discretion in holding John in indirect civil contempt for violating the Amended TRO by (a) failing to turn over the contact list of 14,000 Eagle Forum members and at least some of the contacts lists of 41,000 emails used by Eagle Forum for purposes of sending mass emails, and (b) failing to produce Eagle Forum corporate records. The trial court correctly concluded that there was a current need to enforce the Amended TRO. The Contempt Order and the penalties were

27

imposed for the purpose of compelling future compliance through the production of the aforementioned property. The trial court abused its discretion, however, in finding John in indirect civil contempt for failing to deliver the keys and garage door opener for the office in Washington, D.C., to Eagle Forum, and that finding is hereby vacated. Accordingly, the trial court's order finding John in indirect civil contempt is affirmed in part and vacated in part. John's appeal from the trial court's finding of statutory contempt and Eagle Forum's cross-appeal are dismissed for lack of appellate jurisdiction.

¶ 71    Affirmed in part, vacated in part, and dismissed in part.